UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.: 1:09 CR 222 |
| Plaintiff | ) ) | |
| v. | ) ) | JUDGE SOLOMON OLIVER, JR. |
| LEE MICHAEL LUCAS, | ) ) | |
| Defendant | ) | <u>ORDER</u> |

Now pending before the court in the above-captioned case is Defendant Lee Michael Lucas's ("Defendant" or "Lucas") Pretrial Motions (ECF No. 17). For the reasons that follow, the court grants in part and denies in part Defendant's Pretrial Motions.

**I. BACKGROUND**

Defendant Lucas has been charged with the following offenses: (1) obstruction of justice in violation of 18 U.S.C. § 1503(a) (Counts 1-7); (2) knowingly making false statements in violation of 18 U.S.C. § 1001(a)(3) (Count 8); (3) perjury in violation of 18 U.S.C. § 1623(a) (Counts 9-15); and (4) deprivation of civil rights in violation of 18 U.S.C. § 242 (Counts 16-18). (Indictment, ECF No. 1.) The Indictment alleges that Lucas, who served as a Special Agent of the Drug Enforcement Agency ("DEA") to the Cleveland Resident Agency Office, engaged in illegal conduct during the investigation and prosecution of several individuals accused of drug trafficking. In particular, the

Indictment alleges that Lucas "was responsible for over-seeing and participating in a series of controlled purchases . . . of cocaine and . . . crack" and that these transactions were "arranged and transacted" by a cooperating source, Jerrell Bray ("Bray"). (Indictment at ¶ 4.) It is undisputed that Bray created a scheme whereby he mis-identified the individuals selling the drugs, which resulted in 17 individuals being wrongfully charged for crimes that they did not commit. The Indictment states that Lucas documented what occurred during these set-up transactions by Bray in what is known as a DEA Form 6 ("DEA-6"). While the Indictment does not state that Lucas participated or had knowledge of Bray's scheme, it states that Lucas "included false and misleading information and concealed evidence favorable to accused individuals in DEA-6s of drug purchases made by Bray," and failed to "report misconduct by an informant to his supervisors within DEA . . . and report to the prosecuting authority all acts which might tend to either impeach the credibility of an informant or exculpate a defendant." (Indictment at ¶¶ 9, 10.) Furthermore, the Indictment alleges that he "knowingly testified falsely about material matters at each trial" and obstructed the "due administration of justice in the[se] cases . . ." (Indictment at ¶¶ 11, 12.)

On September 15, 2009, Defendant Lucas filed a Pretrial Motion including various requests related to the upcoming trial. First, he requests that the court strike portions of the Indictment related to Bray's conduct as surplusage and bar proof at trial of a conspiracy to which Lucas was not a part. Second, he argues that a change of vicinage of the trial is necessary. Third, he requests a bill of particulars from the government. Fourth, he seeks to bar the introduction of certain documents under the work product privilege. Fifth, he seeks disclosures under Federal Rule of Evidence 404(b). Lastly, he seeks to bar the government from cross-examining him through the use of prior misconduct.

On December 1, 2009, the court held a final pretrial conference, wherein the court discussed many of these issues with the parties. At the conference, the parties reached an agreement regarding Defendant's third request for a bill of particulars. They did not, however, reach a resolution with regard to the other matters. The court also indicated at the conference that it would allow Defendant Lucas time to file additional evidence with the court to support his fourth request to bar certain documents under the work product privilege as well as other matters. He did file additional information in support of his position. On December 8, 2009, the government filed a Motion requesting one week to respond to this newly submitted evidence by Defendant, which the court granted. (Order, ECF No. 40.) The court addresses all of the remaining issues asserted in Defendant's Pretrial Motion.

## II. LAW AND ANALYSIS

### A. Strike Portion of Indictment

Defendant first requests that the court strike Paragraphs 8(a) through 8(m) of the Indictment. Paragraph 8 of the Indictment states that Bray, under the supervision of Lucas, staged drug-buys to make certain innocent individuals appear to be the drug suppliers in the transaction. Paragraphs 8(a) through 8(m) states with specificity the various transactions that Bray set up and the circumstances surrounding Bray's scheme. Defendant maintains that these allegations are surplusage and that the court should strike these allegations because they are irrelevant and prejudicial. The government, on the other hand, maintains that this information is necessary background information.

A district court may, within its discretion, "strike surplusage from the indictment" pursuant to Federal Rule of Criminal Procedure 7(d). *United States v. Neller*, No. 97-3630, 2000 US App. LEXIS 22414, at *5 (6th Cir. Aug. 25, 2000). A court should grant a motion to strike surplusage

"only where it is clear that the language is irrelevant and prejudicial." *Id.* Furthermore, the Sixth Circuit has expressly stated as follows:

> The striking of surplusage is "permissive but not mandatory," and Rule 7(d) may properly be invoked only when the indictment contains non-essential allegations that could unfairly prejudice the jurors. The rule has been strictly construed against striking surplusage.

*United States v. Miller*, No. 86-1427, 1987 U.S. App. LEXIS 1825, at \*8 (6th Cir. Feb. 5, 1987).

In the instant case, Paragraphs 8(a) through 8(m) outline the way in which Bray carried out his scheme to falsely identify 17 innocent individuals. The paragraphs describe with some specificity the circumstances surrounding the various set-ups and the lies that he told law enforcement to perpetuate his scheme. The government maintains that while Lucas is not being charged with conspiracy or knowledge of Bray's scheme, he did knowingly and intentionally commit perjury and manufactured evidence in order to bolster the credibility of Bray and the case against those charged. It is the government's contention that Bray's scheme "caused the Defendant to need to manufacture and suppress evidence." (Gov't Resp. to Def.'s Pretrial Motions at 15, ECF No. 19.) Thus, in order to demonstrate that Lucas was bolstering Bray's lies, the government seeks to establish, as background information, the scheme created by Bray.

The court agrees that this evidence is relevant to the conduct charged in the Indictment. First, the Indictment specifically alleges that Lucas failed in his obligation to report Bray's misconduct and failed to report to prosecuting attorneys all acts that would tend to impeach Bray. (Indictment at ¶ 10.) This background information would provide further context to these allegations. More importantly, the Indictment may read as accusing Lucas of bolstering Bray's story in ways he knew to be false. The paragraphs that Lucas seeks to strike illustrates this point. For example, as the government points out, Paragraph 8(a) states that Bray set up a buy with one of his

confederates and arranged for this confederate to deliver crack to him. Bray then lied to Lucas and other law enforcement by telling them that the person who sold him the drugs was Noel Mott. Three days later, Bray set up another drug buy, in which he identified the seller to the officers as Lowestco Ballard, as stated in Paragraph 8(b). In actuality, the seller was the same confederate that he used in the drug buy three days earlier and identified as Noel Mott. Counts 9 and 10 of the Indictment accuse Lucas of falsely testifying to have pulled next to the seller and having identified Ballard as the seller at the end of that deal. Thus, the Indictment indicates that these Paragraphs at issue are directly relevant to the charged crimes.

Because the court finds that these paragraphs are indeed relevant, there is no need to address the prejudice element as both elements must be met to support striking the paragraphs. *See Neller*, 2000 US App. LEXIS 22414, at *5. However, Defendant does raise a valid concern regarding potential prejudice that could arise due to the considerable evidence that the government anticipates presenting regarding Bray. Defendant maintains that considerable testimony regarding Bray's conspiracy will be unduly prejudicial to him because the jurors will likely transfer Bray's guilt to Lucas. He also contends that an instruction is unlikely to cure or minimize this prejudice. The Sixth Circuit in *United States v. Blackwell*, 459 F.3d 739, 762 (6th Cir. 2006), stated that "the more evidence presented at trial that is unrelated to the defendant's conduct . . . the less likely instructions are to cure the danger of guilt transference."

While the court agrees that there is a potential for prejudice in this regard, the court disagrees that an instruction would not cure this potential prejudice. As an initial matter, evidence regarding Bray's actions are not wholly unrelated to Lucas's alleged conduct as discussed above. Furthermore, the court finds that a jury would be capable of following an instruction requiring them

to keep Bray's guilt out of their consideration with regard to Lucas.  Additionally, an instruction noting that Lucas is not charged with any involvement or knowledge of Bray's scheme would further require the jury to keep Bray's guilt as a wholly separate matter.  Therefore, the court finds that any such prejudice will be diminished with these instructions.

### B. Change of Vicinage

Defendant requests that the court hear the case in a different venue, specifically one within the Northern District of Ohio, but outside of Cleveland, where the case is currently scheduled to be tried.  Defendant argues that this transfer is necessary "to minimize the prejudice from pretrial and trial publicity."  (Pretrial Motion at 20.)  He notes that a reporter with the Cleveland *Plain Dealer*, John Caniglia ("Caniglia"), has written around thirty news articles since 2007 relating to Lucas, Bray, and the cases against the wrongfully accused and that these articles are consistently biased against him.  He maintains that these articles will make it impossible to select a fair and impartial jury.  He also contends that Caniglia is likely to continue writing about the case throughout the trial, which increases the likelihood that one or more of the jurors will be confronted with prejudicial publicity.

It is well-settled that "[i]f pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the trial court should grant the defendant a change in venue." *See, e.g., Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).  There are two types of prejudice, actual or presumption that can arise from pretrial publicity that would necessitate a change in venue.  *Id.*  Presumptive prejudice arises "where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community." *Id.* (citing *Ritchie v. Rogers*, 313 F.3d 948, 956 (6th Cir. 2002)).  With actual prejudice, on the other hand, a court would make a decision with regard to change of venue

after the commencement of the jury selection process. *Id.* ("[T]he primary tool for discerning actual prejudice is a searching voir dire of prospective jurors . . . to determine whether a community-wide sentiment exists against the defendant.") (internal citations omitted.) The court finds that a change in vicinage is not warranted in this case on either of the bases discussed.

First, while one reporter for the *Plain Dealer* has written many articles spanning across three years, the pretrial publicity does not rise to the level of an inflammatory, circus-like atmosphere that pervades both the courthouse and the Cleveland community. Defendant only points to articles by one reporter in one newspaper, as opposed to various reports in different media outlets. This limited exposure is insufficient to rise to the level of being presumptively prejudicial.

Second, there is no evidence before the court demonstrating actual prejudice. The court has yet to conduct jury voir dire and there is no other polling evidence before the court demonstrating that potential jurors have been prejudiced by the news coverage in this case. Therefore, at the present time, the court finds that there is no evidence of actual prejudice, and that it is proper to deny the request for a change in venue. The court does, however, note that if the jury voir dire reveals such prejudice from prospective jurors, the court will revisit this issue.

Defendant is also concerned that the prejudicial publicity will continue throughout the course of the trial and prejudice the jury. The court finds, contrary to the position of Defendant, that an instruction to the jury that they are not permitted to read any news articles or watch any news coverage on this case will be effective in resolving this issue. There is no reason to believe that the jurors will disregard this directive. Accordingly, the court denies Defendant's request to try the case in another venue within the Northern District of Ohio.

### C. Work Product Doctrine

Defendant seeks to preclude the government from introducing into evidence memoranda created by Lucas that he made in preparation for various factually-related civil suits that were filed against him. The civil suits were filed by the individuals who were wrongfully convicted of drug trafficking based on Bray's set-up. Based on the instruction of Alysia Cuilwik ("Cuilwik"), an attorney with the DEA's Office of Chief Counsel, Lucas created memoranda summarizing the evidence developed against these individuals. (Lucas Aff. at ¶ 4, ECF No. 17-2.) Lucas further contends that Cuilwik and his immediate supervisor, John Ferster ("Ferster"), instructed that he forward these summaries to the other law enforcement officers named as defendants in the civil cases. The government maintains that neither Cuilwik nor Ferster instructed him to do so, and both would testify to the contrary. (Ferster Aff. at ¶ 4, ECF No. 42-1; Gov't Resp. To Def.'s Supp. Filing at 2, ECF No. 42.)

Defendant maintains that these documents are privileged under the work product doctrine. The work product doctrine protects documents "prepared in anticipation of litigation by or for a party or by or for that party's representative." *United States v. Roxworthy* 457 F.3d 590, 593 (6th Cir. 2006) (citing Fed. R. Civ. P. 26). The court in *Roxworthy*, 457 F.3d at 594, held that the test for determining whether a document is privileged under this doctrine is as follows: (1) was the document created "because of a party's subjective anticipation of litigation, as contrasted with an ordinary business purpose"; and (2) was "that subjective anticipation of litigation objectively reasonable." In the instant case, Defendant's affidavit establishes that Lucas created this document because of the civil suits that were filed against him as opposed to any business purpose with the DEA. Additionally, based on his affidavit, it appears that his belief was objectively reasonable as he indicated that the suit had already been filed against him at the time he created the documents.

However, providing purportedly privileged documents to third-parties would generally waive the privilege. *E.g., In re Grand Jury Proceedings October 12, 1995*, 78 F.3d 251, 254 (6th Cir. 1996). The parties dispute whether Defendant waived this privilege by disseminating the documents to the other law enforcement officials who were named in the civil lawsuits. The common interest rule serves as an exception to this general waiver rule. The common interest privilege applies in the following three situations: (1) where an attorney represents multiple clients in a single action; (2) where the parties share a common or joint defense; or (3) where multiple clients share a common legal or commercial interest and share legal advice based on that interest. *See Broessel v. Triad Guar. Ins. Corp.*, No. 1:04CV00004, 2006 U.S. Dist. LEXIS 93726, at \*\*8-\*\*10 (W.D. Ky Aug. 2, 2006). The second situation, or the joint defense privilege, is most relevant in the instant case.

The party asserting the joint defense privilege must show the following: "(1) the communications were made in the course of a joint defense effort; (2) the statements were designed to further the effort; and (3) the privilege has not been waived." *Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, No. 2:99-CV-389, 2000 U.S. Dist. LEXIS 17518, at \*\*17 (S.D. Ohio Nov. 8, 2000). In the instant case, Lucas indicated that he provided his summary memoranda to his other co-defendants in the civil suits as a means to help defend against these lawsuits after the suit was initiated. (Lucas Aff. at ¶ 5.) The government argues that he is not entitled to the privilege because no attorneys were present or otherwise involved when he passed along the summaries to the other law enforcement officials. The court agrees that this joint defense privilege requires the involvement of counsel. *See Travelers Cas. & Sur. Co*, 2000 U.S. Dist. LEXIS 17518, at \*\*17 ("[T]he 'joint defense privilege' protects communications between two or more parties and their respective counsel if they are

-9-

engaged in a joint defense effort."); *United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 29 (1st Cir. 1989); *United States v. Gotti*, 771 F. Supp. 535, 545 (E.D. N.Y. 1991) ("The defendants would extend the application of the joint defense privilege to conversations among the defendants themselves even in the absence of any attorney during the course of those conversations. Such an extension is supported neither in law nor in logic and is rejected.")

In the instant case, the parties present conflicting accounts of attorneys' involvement in the dissemination of the summaries by Lucas.  In Lucas's first affidavit, he stated that "[i]t was my understanding that these officials . . .would provide the summaries that I prepared to their civil defense attorneys."  (Lucas Aff. at ¶ 5.)  His understanding that these summaries would be passed along does not demonstrate a communication involving an attorney and only demonstrates a conversation among co-defendants themselves.  In Lucas's supplemental affidavit, he now maintains that DEA attorney, Cuilwik, "requested that I forward the summaries . . . to the other law enforcement officers who were also defendants in the civil case." (Lucas Suppl. Aff. at  ¶ 2.)  He also contends that his immediate supervisor, Ferster, also instructed that he pass the summaries along to his co-defendants.  The government, on the other hand, contends that neither Cuilwik nor Ferster instructed him to do so.  They provide the affidavit of Ferster, who expressly denies instructing Lucas to provide the summaries to his co-defendants.  They also argue that if asked to testify, Cuilwik would also deny ever making this request.  Based on these conflicting accounts, the court finds that a brief evidentiary hearing would quickly resolve this issue.  The court shall hold this hearing at 9:00 a.m. on January 6, 2010. Jury selection for the trial will immediately follow at 11:00 a.m.  The court anticipates that Cuilwik and Ferster will be called as witnesses should either party wish to call them.

## D. Disclosures under Rule 404(b)

Defendant requests that the government identify all evidence that it seeks to introduce pursuant to Federal Rule of Evidence 404(b), which governs the admissibility of other crimes or wrongs. In response, the government lists all of the evidence that it intends to offer that could be construed as 404(b) evidence. In identifying this evidence, the government notes that the evidence it would seek to present is admissible as relevant evidence under Rule 402. However, if it is deemed inadmissible as directly relevant to the crimes charged, it would argue that it is admissible under Rule 404(b). The government explains that it has identified this evidence as 404(b) evidence "simply as a prophylactic measure to ensure notice to the Defendant and the Court of the alternative ground of admissibility." (Pl.'s Br. in Opp. at 41, ECF No. 19.) Defendant, on the other hand, contends that the government must choose which evidence it will use as Rule 404(b) evidence as this distinction is important for the civil rights charges and to a special verdict form.

The court, however, disagrees. It appears that the government does not intend to offer any of this evidence under Rule 404(b) unless the court decides that it is inadmissible under Rule 402. The court has yet to make a determination regarding the admissibility of this evidence, and it would be premature to do so as the parties have yet to flesh out the issues surrounding this evidence. The government, by stating that it may seek to offer this evidence under Rule 404(b) if the court does not deem it admissible under Rule 402, has provided the required notice. Rule 404(b) specifically states that the prosecution must provide "reasonable notice . . .of the general nature of any such evidence" and the purpose of the notice requirement is to prevent against unfair surprise. *See, e.g.,* 1-404 Federal Rules of Evidence Manual 404.02.

In the instant case, Defendant has not argued that the government failed to provide a sufficient description of the nature of the evidence. Furthermore, the government has made Defendant aware of exactly how it intends to use this evidence. Specifically, it made sufficiently clear that it does not intend to offer this evidence pursuant to Rule 404(b), and will only do so if the court deems it inadmissible as evidence relevant to the crimes charged. Therefore, Defendant will not be unfairly surprised if the government seeks to admit this evidence pursuant to Rule 404(b) in the event that the court finds the evidence inadmissible under Rule 402. Because the court finds that the government complied with the notice requirement for Rule 404(b) evidence, the court denies this request as moot.

### E. Prior Misconduct

Lastly, Defendant requests that the government be precluded from introducing certain evidence of prior misconduct. The government indicates that it only intends to use an Eleventh Circuit case, *United States v. Novaton*, 271 F.3d 968 (11th Cir. 2001), as a means to cross-examine Defendant to impeach his character for truthfulness. In *Novaton*, one issue before the Eleventh Circuit was whether the trial court should have suppressed evidence obtained from a court-authorized wiretap. *Id.* at 984. The appellant-defendant maintained that it should have been suppressed by the trial court because the affidavits used to approve the wiretap contained material misrepresentations and omissions. *Id.* Defendant Lucas was the special agent investigating the case and the agent who purportedly made misstatements in the affidavits submitted to support the application for the wiretaps. *Id.* The Eleventh Circuit agreed that Lucas made misstatements "concerning the past cooperation of the informants based in this case." *Id.* at 987. The Circuit concluded that Lucas made these misstatements either deliberately or recklessly. *Id.*

The government maintains that this evidence is admissible under Rule 608(b) as evidence of Lucas's untruthfulness. Defendant, on the other hand, contends that the purported misstatements occurred in 1993 and is therefore too remote to be probative of truthfulness. Additionally, he contends that the government is judicially estopped from arguing that it is admissible under Rule 608(b) because the United States Attorney's Office for the Northern District of Ohio has argued in other cases where Lucas has testified that the case was not probative due to its remoteness and that the case was unduly prejudicial, which is contradictory to their position today.

As an initial matter, the court disagrees that the government is judicially estopped from making this argument. As the government points out, courts are reluctant to use judicial estoppel against the government. *See, e.g., United States v. Owens*, 54 F.3d 271, 275 (6th Cir. 1995) (noting the limited application of judicial estoppel against the government, finding that it should apply only where it "appears to be a knowing assault upon the integrity of the judicial system.") However, the court agrees that this conduct is too remote in time to be probative. The misstatement was not made recently as it occurred in 1993, nearly 16 years ago. Furthermore, the Eleventh Circuit was hesitant to characterize his statements as a deliberate lie, noting that it could have been a reckless misstatement. The Eleventh Circuit also found that the misstatements were not material to the case. *Novaton*, 271 F.3d at 987. The government's use of this case has the potential of portraying Lucas as an agent who consistently lies throughout his police work, when in fact this one incident occurred long before this suit and the full circumstances surrounding the misstatement are unclear. The jurors may also put significant and unfair value on this incident because it is a statement from a court. Because of the remoteness in time and the court's reluctance to find that he deliberately lied as opposed to making a reckless misstatement, the court finds that this evidence has low probative

value, which is substantially outweighed by the prejudicial value of this evidence. Thus, the court agrees that the *Novaton* case is inadmissible under Rule 608(b).

### III.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part Defendant's Pretrial Motions. Specifically, the court denies Defendant's request to strike portions of the Indictment as surplusage and change vicinage. The court grants Defendant's request to preclude the government's use of the *Novation* case for impeachment. The court denies as moot Defendant's request for a bill of particulars and disclosures under Rule 404(b). Lastly, the court withholds ruling on Defendant's request to preclude a document based on the work product doctrine. The court shall hold an evidentiary hearing on this issue on January 6, 2010, at 9:00 a.m., with jury selection to follow immediately at 11:00 a.m.

IT IS SO ORDERED.

/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE

December 23, 2009